Davis, J.
The circuit court based its conclusions upon the proposition that Sections 794 to 799, inclusive, of the Revised Statutes, apply in respect to contracts made by this commission. If these sections do not so apply the judgment of the court of common pleas was correct and the judgment of the circuit court must be reversed.
.As we construe the statutes, two independent modes of erecting court houses are provided. One mode is under the supervision of the county commissioners, upon plans submitted to them, the clerk of the court, the sheriff, probate judge, and one person to be appointed by the judge of the court of common pleas,' and to be approved by a majority of them.. The procedure under this scheme is defined in Sections 794 to 803 of the Revised Statutes. A very different and, as we regard it, complete and independent scheme is provided for in “An act to provide for a commission for building court houses” *371 (97 O. L., m) as amended (98 O. L., 53). The first mode or scheme may be applied to any building which shall cost ten thousand dollars or more; the second to court houses which shall cost to exceed twenty-five thousand • dollars. Under the first scheme, after the adoption of plans and specifications, all subsequent proceedings are to be under the management and control of the county commissioners and along prescribed lines, as to obtaining bids or proposals and the letting of contracts; under the second scheme, from the time the electors determine in the affirmative, the question of issuing bonds for the construction of the building, and until its completion, the entire-business of carrying out the purpose of building a court house is placed within the control of a building commission consisting of the county commissioners and four freehold electors of the county to be appointed by the judge of the court of common pleas for the county. This building commission shall first adopt plans, specifications and estimates; and shall then “invite bids and award contracts,” and “determine all' questions connected therewith”. until the court house shall have been completed and accepted by them. Unlike the county commissioners in the first scheme, the building commission, although required to “invite bids and award contracts,” is not restricted as to the mode of doing so. It is empowered with the broadest discretion “to determine all questions connected therewith;” and the statute which so empowers the building oommission is neither supplementary td nor amendatory of Sections 794 to 799, Revised Statutes, and does not even refer to those sections to qualify its general terms.
Without further pursuing the comparison of the *372 statutes, it may be said in brief that the later statute is in no respect ambiguous or repugnant to the former. It seems to cover, and to confer upon” the building commission, in general terms, every phase of power and duty which is conferred upon the county commissioners, and more. The building commission must in some way resort to competitive bidding, because it is required to “invite bids;” but it is not said, or implied, that the commission must conform to the procedure prescribed for the county commissioners under like circumstances. It may or may not do so. In like manner • the building commission is empowered and required to make contracts; but it is not. said, or intimated, that the contracts must be awarded to the lowest, or to the lowest and best, bidder. In regard to the whole matter of bids and contracts, it seems to us that the general assembly gave to the building commission the broad power “to determine all questions connected therewith.”
It is objected, however, apparently with much confidence, that Section 2 of the Act of April 13, 1888 (85 O. L., 218), makes Sections .794 to 801 of the Revised Statutes applicable to building commissions constituted and proceeding under the Act of April 18, 1904, as amended. This does not seem to be a legitimate inference. Those sections are there made to apply to all public buildings, “anything in other sections of the Revised Statutes to the contrary notwithstanding;” but this provision applies, and could only apply, to. the Revised Statutes as they then existed, because the general assembly of that time could not tie the hands of. any subsequent’ general assembly.
And because the building commission act is not *373 ambiguous or necessarily inconsistent with, because entirely independent of, Sections 794 to 799, it is not necessary to resort to the rule of construction as to statutes in pari materia. Certainly the rule can not be invoked to read into the later act whole sections of former acts, when there is no intimation of such an intent on the part of the legislature; for it is to be presumed that the legislature knew the existing law, and it was the easiest thing possible, if it were intended that this building commission should be controlled by the existing law, to have so said without otherwise defining the powers and duties of the commission. Counsel have strenuously argued that the act relating to building commissions is. special in its character; that it is now a part of the title in the Revised Statutes, relating to public buildings; and that as such is must be construed in connection with the other acts embodied therein and in relation to public policy therein declared. The force of this argument is repelled when the simple fact is noted that the building commissioners’ act is not a special act and is not a part of any authorized revision of the statutes. For some reason it is placed in juxtaposition with Section 794, Revised. Statutes, by the editors and publishers of an edition of the Revised Statutes; but the general assembly has not directed nor authorized it to be put there. It is not a special statute because, no matter where or how it originated, it is not only general and not particular in its terms, but it is an act of a general nature operating uniformly throughout the state.
While in this case no fraud or wrong motive is alleged against the building commission, It is replied against our construction of the statute that *374 it would open wide the door to peculation and betrayal of the public trust. One answer. to this is that, much as sometimes we would like to possess' legislative power, this court, is not a legislature, and therefore can not modify, amend or repeal laws which may not meet our approval; nor have we any right to accomplish the same ends by forced construction. But another answer is that the general assembly, perhaps believing that proceedings under the existing statutes had not always worked out" the best results for the public, rio doubt had it in mind to try a scheme of putting the whole matter within the control of a building commission of the highest attainable character and efficiency, whose experience and known integrity, together with the usual requirements'of an oath and a. bond, and restrictions as to the payment of money, and as to full and accurate record of all proceedings, would sufficiently. safeguard the public interests. Every man has realized in his own experience, that the lowest price does not always secure satisfactory results and that some things which are most desired are not open to competition. Whether the scheme thus prescribed in the Act of 1904 is better, or worse than the one which already existed, arid whether it will accomplish the purposes of the legislature are questions with which the courts have no concern. It is enough that we find it to be a complete, consistent and independent system and that the people of any county in the state, when they'desire to build a court house, have the option to pursue either of the methods thus provided by law.
The act under which this building commissiori has been constituted and has proceeded has been attacked as unconstitutional for several reasons. *375 None of these objections seems to be well founded; and nothing- more needs to be said of them since most, if not all of them, have been considered in reported decisions in other cases.
The judgment of the circuit court is therefore

Reversed and Petition of Relator dismissed.

Shauck, C. J., Price, Crew and Summers, JJ., concur.